CHARLES E. JOHNSON *v.* STATE OF INDIANA.

[No. 172A20.  Filed May 8, 1972.]

*James P. Dunn,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Paul H. Frazier,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Appellant Charles E. Johnson (defendant below) was charged by affidavit in two counts for second degree burglary and theft. Trial was to a jury which found appellant guilty as charged by both counts of the affidavit. Judgment was entered on the verdict that the defendant was guilty of the crime of burglary in the second degree as charged in Count One of the affidavit and defendant was sentenced to the Indiana State Reformatory for a period of not less than two years nor more than five years, that he pay and satisfy the costs and charges taxed at $48, and that he be disfranchised and rendered incapable of holding any office of trust or profit for a period of five years. Judgment was also entered on the verdict that the defendant was guilty of the crime of theft as charged in Count Two of the affidavit, and defendant was sentenced to the Indiana State Farm for a period of one year and that he pay and satisfy the costs and charges taxed at $48; the one-year sentence to run concurrently with the two-to-five-year sentence to the Indiana State Reformatory. The motion to correct errors filed by Johnson was overruled by the trial court, and Johnson has perfected this appeal.

A summary of the evidence as contained in the record before us is as follows:

Roger Foster, a witness for the State, testified, on direct examination, that about midnight on January 28, 1971, he went to the home of Johnson's girl friend in Goshen, Indiana, where he met Johnson and another man named Ferguson. He further testified that Johnson asked him to drive him to Fort Wayne; that Ferguson drove the car and he (Foster) "got in the back," and that on the way to Fort Wayne Johnson said that he knew where they could get some money and directed them to the Western Auto Store in Churubusco; that they stopped in an alley and that he (Foster) "went and broke a window out and me and Angel [Ferguson] went on in." Foster also testified that Johnson had told him that there was a drawer under the cash register with money in it. Having looked in the drawer and finding "no bunch of

money" Foster testified that he and Ferguson left the store and returned to the car where Johnson had remained. Foster testified that the three drove around for awhile, then returned to the store and he and Johnson went in and while Foster was placing some articles near the door, Johnson returned to the car and he and Ferguson drove away being followed by the police.

Max Miller, the arresting police officer, testified, on direct examination, that at approximately 3:30 A.M., on January 29, 1971, as he was approaching the alley behind the Allman Body Shop he observed an individual, whom he identified to the jury as being the defendant-Johnson, standing at the corner of the alley "facing the police station." The police officer testified that as he turned into the alley Johnson "hurried and got into the passenger side of the vehicle," a 1959 Chrysler automobile parked behind the Western Auto Store. Miller further testified that the car accelerated at a high rate of speed down the alley; and that he pursued the car until it was subsequently stopped by a road block set up in response to Miller's radio call for assistance.

During the direct examination of Miller by the State, the prosecution attempted to introduce into evidence certain articles marked Exhibits Nos. 1 through 9. Miller identified each of the nine exhibits as articles taken from the 1959 Chrysler by him. The prosecutor offered into evidence State's Exhibits Nos. 1 through 9. Defense counsel then made the following objection:

"MR. DUNN: The defense will object, Your Honor, because there has been up to this point no connection between these items and the defendant. There has been no connection between these items and the criminal act that supposedly took place. There is no identification that these items belonged to Ben Franklin or belonged to anybody. There is no identification that this man ever had them or had any reason to know that they existed. They were in a car in which he was riding in. This is not connecting him with it."

Following a conference held "off the record" the court admitted into evidence only Exhibit No. 1 (five rolls of pennies, two rolls of quarters, 2 rolls of nickels and one roll of dimes); Exhibit No. 2 (an AC-DC converter); and Exhibit No. 3 (a ladies Timex wrist watch).

Upon direct examination, Benjamin F. McDaniel, the owner of Ben's Western Auto Store, testified that on the evening of January 28, 1971, he had left between $30 and $40 worth of rolled coins in the cash drawer but did not identify the specific rolls of coins admitted into evidence. He did identify the AD-DC converter and the Timex wrist watch as items that were in the cash drawer in his store on January 28, 1971.

On appeal appellant-Johnson first contends that the verdict is contrary to law and contrary to the evidence. In addition to answering this contention, the following discussion will answer Johnson's contention that the trial court erred in overruling his motion for a directed verdict.

In *Maynard* v. *State* (1971), 257 Ind. 336, at 339, 274 N. E. 2d 396, at 398, our Supreme Court stated:

> "This court has, in the past, and must in this case abide by the rule which states that this court will not weigh the evidence nor resolve questions of credibility, but will look to the evidence most favorable to the state and the reasonable inferences therefrom which support the verdict of the trial court or jury. [Citing authorities.] A conviction must be affirmed, if having applied the rule; there is evidence of probative value from which the trier of the facts could reasonably infer that the appellant was guilty beyond a reasonable doubt." [Citing authorities.] See also: *Hightower* v. *State* (1971), 256 Ind. 344, 269 N. E. 2d 10; *Washington* v. *State* (1971), 257 Ind. 40, 271 N. E. 2d 888.

In the instant case the evidence as hereinabove set forth and reasonable inferences therefrom, along with the other evidence contained in the record before us, provided sufficient evidence of probative value from which the jury could have found that the defendant was guilty beyond a reasonable doubt as to each element of the crimes

charged. The trial court was correct in overruling Johnson's motion for a directed verdict. The verdict cannot be set aside as contrary to law or contrary to the evidence.

The next contention argued by appellant-Johnson is that the trial court erred in overruling defendant's objection to the introduction of certain misdemeanors committed by defendant.

On cross-examination appellant was asked the following question: "Charles, have you ever been prior to this date convicted of any crime?" In response, Johnson testified that he had been convicted in Kentucky of "dwelling house breaking or something like that" and that he had pleaded guilty to traffic violations and assault and battery. The following "objection" by the defense counsel was then made:

> "MR. DUNN: Your Honor, what does a misdemeanor traffic violation have to do with this crime?
> "COURT: Are you objecting?
> "MR. DUNN: Yes.
> "COURT: What is your objection? State your objection.
> "MR. DUNN: I am objecting to delving into misdemeanors and traffic offenses on the grounds that they have no bearing on the possibility of whether he did or did not commit this crime. There is nothing in the record that would lead to that type of cross-examination.
> "COURT: I am going to sustain the objection but not for the reason as stated. * * *."

The record before us discloses that after the objection to "delving into misdemeanors and traffic offenses" was sustained, the prosecution did not pursue this line of cross-examination. The defense counsel made no motion to strike the testimony from the record and made no request to have the jury admonished. The trial court having sustained the objection, not for the reason given by the defense, but for its own reason, did not, in its discretion, find any prejudice to require admonishing the jury. The objection was sustained as to both "misdemeanors and traffic violations."

No timely action was taken to remedy any supposed prejudice nor has appellant, on appeal, shown how he was prejudiced by the action of the trial court. No error is shown.

The next contention argued by appellant is that the trial court erred in admitting into evidence, over defendant's objection, certain items not properly connected with the defendant.

The evidence in regard to the three exhibits admitted into evidence as hereinbefore set out shows that the arresting officer testified that the three exhibits had been taken from the car in which Johnson was a passenger and identified Johnson as having entered the passenger side of the car at the scene of the crime. The owner of the store identified the converter and the Timex wrist watch and testified that they were in the cash drawer on the evening of January 28, 1971. Furthermore, the owner stated that approximately $30 to $40 in rolled coins was in the drawer the night before the crime. This evidence, as well as the other evidence contained in the record before us, more than sufficiently connects the exhibits to the defendant, and the exhibits to the crime. Defendant has shown no reversible error regarding the trial court's rulings on the admission of the evidence.

Also, in arguing this contention, Johnson has raised several objections regarding the evidence not preserved by a motion to suppress, timely or proper objections, motions to strike or motions for mistrial

In *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815, the appellant at trial objected to the admission of burglary tools because the particular exhibits were not "connected" with the alleged crime. On appeal the appellant contended that the evidence was the product of an illegal search and seizure. Our Supreme Court, at 422 of 250 Ind., at 816 of 236 N. E. 2d, held:

"We are compelled to hold that since the appellant failed to object at trial for the same reasons now being urged, he is deemed to have waived his alleged errors. One may not

raise objections for the first time on appeal in this Court when there was afforded an ample opportunity to raise the objection during the course of the trial. See also: *Dull* v. *State* (1962), 242 Ind. 633, 180 N. E. 2d 523." See also: *Jones* v. *State* (1970), 254 Ind. 499, 260 N. E. 2d 884; *Heyverests* v. *State* (1931), 202 Ind. 359, 174 N. E. 710.

Similarly, Johnson's objections concerning insufficiency of the affidavit and the "chain of possession" have been raised for the first time on appeal. No error has been preserved. *Tyler* v. *State, supra.*

Johnson next contends that he was prejudiced by the injection of guns into the case by the State. The record before us shows that the guns to which Johnson refers were only offered into evidence. Such guns were excluded upon Johnson's timely objection. There is no indication in the record that Johnson was prejudiced by the mere offer into evidence of such guns.

The next contention argued by Johnson is that the trial court erred "in not granting this defendant a change of Venue from the county."

The statutory authority for the granting of a change of venue from the county in the instant case is found in Rule CR. 12, Indiana Rules of Procedure, which, in pertinent part, provides as follows:

"Upon the filing of a properly verified application, a change of venue from the county shall be granted in all cases punishable by death and may be granted in all other cases when in the court's discretion cause for such change is shown to exist after such hearing or upon such other proof as the court may require."

Under this rule a trial court's denial of a change of venue, except in cases punishable by death, is reviewable only for abuse of discretion. See: *Smith* v. *State* (1960), 241 Ind. 1, 168 N. E. 2d 199. The test to be applied in determining whether there has been an abuse of discretion has been held to be whether the defendant had a fair

trial, not what was asserted in the application for change of venue. *Carraway* v. *State* (1956), 236 Ind. 45, 47, 138 N. E. 2d 299.

Here, there is no indication in the record that the defendant did not receive a fair and impartial trial. No abuse of discretion is shown.

Another contention argued by Johnson is that the trial court should have granted a stay of execution and released this defendant on bond at the time of sentencing. This contention is of no avail to Johnson for several reasons: 1) This argument is not contained in appellant's motion to correct errors; 2) the outcome of this argument has no bearing on the propriety of the convictions which Johnson is presently appealing; and 3) this is a moot issue because the record shows that Johnson was admitted to bail pending the outcome of this appeal in accordance with the requirements set forth in Acts 1935, ch. 283, §§ 1 and 2, p. 1399, as found in IC 1971, 35-4-6-1, Ind. Ann. Stat. § 9-2312 (Burns 1956) and IC 1971, 35-4-6-2, Ind. Ann. Stat. § 9-2313 (Burns 1956).

The final assignment of error set forth in paragraph 5 of appellant's motion to correct errors is that he "was prejudiced and prevented from having a fair trial by the court finding him guilty of contempt and imposing on him a jail sentence."

The record discloses that the contempt finding arose from the following circumstances. The cause was originally set for trial on April 14, 1971. On April 12, 1971, two days before trial, Johnson's original attorney withdrew his appearance for the defendant. On April 14, 1971, the defendant appeared and advised the trial court that he wished a continuance for the purpose of obtaining an attorney of his choice at his expense. The trial court thereupon found the defendant in direct contempt of court and ordered the defendant confined to the Whitley County jail for thirty days.

On April 28, 1971, Johnson filed his motion to correct errors requesting the trial court to purge him of the contempt order theretofore entered. On May 12, 1971, the trial court,

having considered the motion to correct errors, found that by obtaining counsel to represent him the defendant had purged himself of contempt and the court ordered the defendant released from the Whitley County jail.

The finding of the defendant guilty of contempt raises, on its face, a suspicion as to its propriety. However, we cannot decide the merits of such finding inasmuch as no timely appeal was perfected therefrom. The only claim which we can consider is whether the contempt finding prejudiced Johnson's right to a fair trial.

Having carefully examined the record before us and the briefs of the parties filed herein, there is no indication that the convictions of the defendant were prejudiced by the prior contempt finding, nor does Johnson allege specifically what prejudicial error was committed.

Appellant having failed to sustain his burden of proof in showing reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported in 281 N. E. 2d 922.