CHARLES WINSTON *v.* STATE OF INDIANA.

[No. 2-1173A258. Filed August 14, 1975. Rehearing denied September 10, 1975. Transfer denied December 9, 1975.]

*Harriette Bailey Conn (Mrs.),* Public Defender of Indiana, *William B. Bryan,* Deputy Public Defender, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Charles Winston was charged by indictment on September 21, 1971 with possession of heroin in violation of the 1935 Narcotics Act, IC 1971, 35-24-1-2, Ind. Ann. Stat. § 10-3520 (Burns 1956) as amended by Acts 1961, ch. 90, § 2, p. 172-173.[1] Winston was tried to the court without jury on February 10, 1972, found guilty as charged, and sentenced to a term of two to ten years imprisonment.

The record reveals that on April 28, 1971, Winston was placed under surveillance by Officers Brenton and Robertson of the Indianapolis Police Department as he stood in the doorway of a poolroom in the 400 block of West North Street in Indianapolis. The officers were acting on the basis of a tip given them by a "reliable" informant moments before they began surveillance. The content of the tip was excluded by the trial court.

As the officers watched, Winston was approached by another man whose identity is not disclosed. After conferring briefly, Winston removed his shoe, reached inside it, and extracted a yellow package. Both Officers saw Winston open the package and reach inside it. Officer Robertson stated that he saw Winston take something from the package and give it to the other man. Winston then returned the yellow package to his shoe and put the shoe back on while the other man walked away. After Winston's transferee had left, the Officers approached Winston, identified themselves, asked Winston to remove his shoe, and, when Winston did so, retrieved the package. The yellow package was later found to contain several "bindles" of heroin.

Winston's motion to correct errors and supporting memorandum assert three alleged errors in the trial below:

1. The trial judge erred in admitting testimony concerning the yellow package and what it contained.

1. The 1935 Narcotics Act has been replaced by IC 1971, 35-24.1-1-1—35-24.1-6-1, Ind. Ann. Stat. § 10-3558—§ 10-3566 (Burns Supp. 1974).

2. The trial judge erred in overruling Winston's motion for dismissal made pursuant to Ind. Rules of Procedure, Trial Rule 41(B).[2]

3. There was insufficient evidence to sustain the conviction.

## ERROR IN THE ADMISSION OF TESTIMONY CONCERNING HEROIN NOT PROPERLY BEFORE THIS COURT

Winston argues that the trial court's exclusion of the substance in the yellow package on fourth amendment grounds required the trial judge to exclude all testimony concerning the heroin as "tainted" by an illegal seizure. We voice no opinion concerning the merits of Winston's theory because we conclude that any error in the admission of crucial testimony concerning the heroin is not properly before this court.

A settled rule of appellate practice in Indiana is that error may not be predicated on the admission of evidence unless there was timely objection in the trial court. *Harrison* v. *State* (1972), 258 Ind. 359, 281 N.E.2d 98; *Hendley* v. *State* (1974), 160 Ind. App. 338, 311 N.E.2d 849. To be sufficient to preserve error, the objection must not only be timely but must be specific with respect to the reason the objector believes the evidence incompetent. *Gaynor* v. *State* (1966), 247 Ind. 470, 217 N.E.2d 156; *Smith* v. *State* (1974), 159 Ind. App. 438, 307 N.E.2d 875. The fact that the alleged inadmissibility of a particular piece of evidence rests on constitutional rather than common law or statutory grounds has not deterred the Indiana courts from applying the specific and timely objection requirement with equal force in such cases. *See Harrison* v. *State, supra; Smith* v. *State* (1971), 256 Ind. 603, 271 N.E.2d 133; *Sargeant* v. *State* (1970), 255 Ind. 252, 263 N.E.2d 525; *Tyler* v. *State* (1968), 250 Ind. 419, 236 N.E.2d 815; *Mosby* v. *State* (1975), 164 Ind. App. 479, 329

---

2. Winston's TR. 41(B) motion came at the close of the State's case. After his motion was denied, Winston rested, producing no evidence on his behalf. Hence the error assigned to the denial of the TR. 41(B) motion is not waived. *Compare Pinkston* v. *State* (1975), 163 Ind. App. 633, 325 N.E.2d 497; *Hoosier Insurance Co.* v. *Ogle* (1971), 150 Ind. App. 590, 276 N.E.2d 876.

NE.2d 600; *Hardin* v. *State* (1972), 153 Ind. App. 317, 287 N.E.2d 359; *Johnson* v. *State* (1972), 152 Ind. App. 104, 281 N.E.2d 922.

When Officer Robertson testified that the yellow package came from Winston's shoe, Winston's trial counsel merely stated "I object." Robertson later stated that the package had been in Winston's possession prior to the arrest. This time there was no objection whatever. Winston's trial counsel did not object when Robertson described how he had placed the yellow package in a sealed envelope, initialed the envelope, and placed it in the police property room lock box. Finally, there was no objection to Police Chemist Phillips' testimony that he had removed the initialed envelope from the police property room, scientifically analyzed the contents of the yellow package, and discovered that the bindles in the package contained heroin. Winston's failure to properly object to this testimony constitutes a waiver of alleged error in the testimony's admission. *Harrison* v. *State, supra; Gaynor* v. *State, supra; Mosby* v. *State, supra; Hardin* v. *State, supra.*

It could be argued that we should consider the admission of Robertson's and Phillips' testimony concerning the heroin as "fundamental error". The "fundamental error" doctrine permits a reviewing court to consider the merits of an improperly raised error if the reviewing court finds that "the record reveals error so prejudicial to the rights of the appellant that he could not have had a fair trial." *Grier* v. *State* (1968), 251 Ind. 214, 216-217, 240 N.E.2d 494, 496.[3] The doctrine of "fundamental error" allows an appellate court to by-pass the normal rules of appellate procedure, such as the requirement of a timely and specific

3. *See also Kleinrichert* v. *State* (1973), 260 Ind. 537, 297 N.E.2d 822; *Webb* v. *State* (1972), 259 Ind. 101, 284 N.E.2d 812; *Young* v. *State* (1967), 249 Ind. 286, 231 N.E.2d 797; *Ford* v. *State* (1967), 248 Ind. 438, 229 N.E.2d 634; *Wilson* v. *State* (1943), 222 Ind. 63, 51 N.E.2d 848; *Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827. For cases applying this doctrine in other jurisdictions, see C.J.S. Criminal Law § 1681, n. 72, § 1684 n. 14. For discussion of the analogous doctrine of "plain error", see 8A Moore's *Federal Practice* § 52.02; 1 Weinstein & Berger, *Evidence* § 103[07] (1975); McCormick, *Evidence* § 52 (2d Ed. 1972).

objection, and, in so doing, to disregard the sound judicial policy underlying that procedure.[4] The circumvention of established procedures permitted by the "fundamental error" doctrine constitutes a forceful reason for our Supreme Court's reluctance to invoke the doctrine unless the record reveals "blatant error" that denies "the Appellant fundamental due process." *Webb* v. *State, supra,* 284 N.E.2d at 815.

Notwithstanding Winston's assertion that the admission of the testimony violated his constitutional rights under the fourth and fourteenth amendments to the United States Constitution, the error claimed to exist in the admission of the testimony of Officer Robertson and Police Chemist Phillips is not a "blatant error" denying Winston "fundamental due process", *Webb* v. *State, supra,* 284 N.E.2d at 815.

We find implicit support for our conclusion in the numerous Indiana cases wherein the failure to properly object to allegedly unconstitutionally incompetent evidence has been viewed as a waiver of the issues on appeal. *See, e.g., Tyler* v. *State, supra; Jones* v. *State* (1970), 254 Ind. 499, 260 N.E.2d 884; *Mosby* v. *State, supra; Johnson* v. *State, supra.*

Our holding that no "fundamental error" exists in this case is further substantiated by contrasting the instant case with those Indiana cases wherein such an error has been found. *See, e.g., Young* v. *State, supra* (sentence imposed for offense not charged) ; *Ford* v. *State, supra* (trial judge improperly induced defendant to waive trial by jury) ; *Wilson* v. *State, supra* (incompetent representation plus prejudicial

---

4. Professor McCormick states the policy basis for the timely objection requirement as follows:

"If the administration of the exclusionary rules of evidence is to be *fair* and *workable* the judge must be informed *promptly* of contentions that evidence should be rejected, and the reasons therefor. The initiative is placed on the party, not on the judge." (Emphasis supplied) McCormick, *Evidence* § 52, p. 113 (2d Ed. 1972).

For extended discussion of the policy behind the timely objection requirement, *see also* 1 Wigmore, *Evidence* § 18 (3d Ed. 1940). The Supreme Court of Pennsylvania has recently found these policies to be so important as to compel the total abrogation of the "fundamental error" doctrine. *See Commonwealth* v. *Clair* (1974), Pa., 326 A.2d 272; *Dilliplaine* v. *Lehigh Valley Trust Co.* (1974), Pa., 322 A.2d 114.

remarks by the trial judge) ; *Branan* v. *State* (1974), 161 Ind. App. 443, 316 N.E.2d 406 (trial judge failed to insure that defendant's guilty plea was knowing and voluntary). We think that this comparison highlights two important differences between the instant case and the cases wherein "fundamental error" has been found. One of these has reference to what we think is the proper interpretation of the Supreme Court's language in *Grier* v. *State, supra;* the other is rooted in the policy underlying the timely objection requirement.

The first distinction rests on the character of the alleged error and its effect on the trial as a whole. The Supreme Court's definition of fundamental error in *Grier* v. *State, supra,* as being an error which is so prejudicial to the defendant that he *"could not* have had a fair trial"*, Id.* at 217, 250 N.E.2d at 496 (emphasis supplied), suggests to us an error that pervades the climate of the proceedings below, *viewed as a whole,* depriving the defendant of any realistic opportunity for a fair hearing. The cases in which "fundamental error" has been recognized in the trial judge's unfair conduct towards the defendant, *see, e.g., Ford* v. *State, supra, Wilson* v. *State, supra,* substantiate our inference as to the character of error which will be considered "fundamental". The United States Court of Appeals for the Second Circuit, in refusing to review the admission of supposedly constitutionally inadmissible evidence because of a failure to timely object to its introduction below, stated that its power to review improperly raised errors would be restricted to errors which "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States* v. *Indiviglio* (2nd Cir. 1965), 352 F.2d 276, 280. We think that the *Indiviglio* court's statement corroborates our interpretation of the character of "fundamental error" gleaned from the Indiana cases: that such errors are those that so inundate the trial as to remove from the proceedings its essential cloak of fairness. Admission of the testimony here questioned is not such an error.

The second distinction relates to the function of the proper

objection requirement. In the cases in which Indiana courts have found "fundamental error", the error involved the mistake or misconduct of the trial judge in the exercise of his own affirmative duties, whether the duty was to conduct the trial fairly without prejudice to either side *(see Wilson* v. *State, supra)*, insure that formal waivers of constitutional rights were valid *(see Ford* v. *State, supra, Branan* v. *State, supra)*, properly sentence the defendant according to law *(see Young* v. *State, supra)*, or insure that the trial did not become a mockery of justice *(see Wilson* v. *State, supra)*. In all these cases, the trial judge erred in performing some duty which the law had charged him to perform *sua sponte*. Presumably a trial judge is aware of his own *sua sponte* duties. Thus the necessity of informing him of dereliction in such duties, and the likelihood that he would properly perform such a duty merely because defense counsel informed him of it, is slight. Therefore, in the case of error by a trial judge in his *sua sponte* obligations, the policy requiring timely and specific objection, see 1 Wigmore, *supra,* § 18 (3d Ed. 1940), is not as significant a factor weighing against invocation of the "fundamental error" doctrine as in matters wherein the parties necessarily shoulder the burden of pointing out error. Such matters without doubt include the admission of evidence, since only the interested party himself can really know whether the introduction or exclusion of a particular piece of evidence is in his own best interests. Thus, adherence to the proper objection requirement in the realm of evidentiary issues is both necessary and reasonable to insure that "the administration of the exclusionary rules of evidence is . . . *fair* and *workable."* McCormick, *Evidence* § 52, p. 113 (2d Ed. 1972) (emphasis supplied) ; *see also* 1 Wigmore, *Evidence* § 18 (3d Ed. 1940). The connection between the policy favoring speedy correction of prejudicial errors so as to avoid needless mistrials and the timely objection rule as to the introduction of evidence is close and substantial; the nexus between policy and rule as to the trial court's affirmative duties is more remote. Recognition of this difference explains

the courts' comparative reluctance to disregard the appellant's failure to timely object, and review the alleged error by calling it "fundamental", respecting evidentiary errors, as opposed to errors in the trial judge's discharge of his *sua sponte* obligations. We adhere to that distinction in this case and refuse to review the alleged erroneous admission of the testimony of Officer Robertson and Police Chemist Phillips. To do otherwise would be to run roughshod over established policy particularly served by the objection requirement.

If the two distinctions as to the type of error we should deem "fundamental" suggested by the Indiana cases are not sufficient to convince that the admission without proper objection of the testimony of Robertson and Phillips is not such an error, a final policy consideration must tip the balance. If we were to take the position that alleged errors in the admission of possibly unlawfully obtained evidence were reviewable by this court *sua sponte* as "fundamental", we would force the trial judge, on pain of reversal, to become a "super-trial-defense counsel", scrutinizing every piece of the State's evidence on the accused's behalf. *See Commonwealth* v. *Clair, supra,* 326 A.2d at 273. The trial judge would have to determine *sua sponte* the legality, probative value, and potential prejudice of each apparently unrelated piece of evidence offered by the State. To so drastically alter our traditional adversary system under the guise of "fundamental error" is a course we refuse to follow.

## SUFFICIENT EVIDENCE TO SUSTAIN CONVICTION FOR HEROIN POSSESSION

We consider Winston's allegations of error as to the denial of his TR. 41(B) motion and as to the sufficiency of the evidence together, since if there was sufficient evidence to sustain the conviction it was obviously not error to deny Winston's TR. 41(B) motion. We conclude that there was sufficient evidence to sustain Winston's conviction for possession of heroin.

In light of the admission of the testimony of Officer Robert-

son and Police Chemist Phillips to which we have already referred, there existed sufficient evidence for the  trial judge to reasonably conclude that Winston had possessed a yellow package which contained heroin. The fact that the heroin itself was not admitted is of no consequence since "conviction for narcotic possession does not depend upon having the substance itself admitted into evidence." *Mayes* v. *State* (1974), 162 Ind. App. 186, 318 N.E.2d 811, 819 (*transfer denied,* January 24, 1975) ; *see also Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652.

Affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 332 N.E.2d 229.